UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *1:21-cr-00088-PB |
| | * |
| | * |
| COREY DONOVAN | * |
| | * |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

I.  Introduction and Procedural Background

On September 27, 2021, the defendant filed a post-conviction motion titled <u>Motion to Dismiss; or Motion for a New Trial or New *Franks* Hearing</u>. Doc. 77.  A hearing on this motion was scheduled for January 3, 2023.  On the same date, the defendant was also scheduled for a sentencing hearing on the above matter as well as a hearing on the petition alleging that he had violated the conditions of his release on Case No. 1:07-cr-00130-SM.  As there were several complex factual issues related to sentencing as well as the testimony of several witnesses, there was not sufficient time to address the merits of the <u>Motion to Dismiss; or Motion for a New Trial or New *Franks* Hearing</u> on January 3, 2023.  This Court scheduled a further hearing on the motion for February 13, 2023.

At the hearing on January 3, 2023, the Court instructed defense counsel to file a supplemental motion on or before January 17, 2023, that charts each specific item that the defense claims was not produced prior to trial and the substance of those items so that the Court can better determine the significance of this material.  This motion follows.

1

II.     Chart of Evidence that is the Subject of the Motion to Dismiss; or Motion for a New Trial or New *Franks* Hearing

Below is a chart the defendant created regarding the evidence that is the subject of his Motion to Dismiss; or Motion for a New Trial or New *Franks* Hearing. As the significance of some of the evidence is only apparent when it is contrasted to other evidence on the same topic, the defendant has grouped the evidence by the following topics related to the *Franks* issue: 1) misstatement and omission about the firearm found at the Somersworth Cumberland Farms on December 22, 2020 that was the subject of Agent Forte's claim that Fillion gave truthful and accurate information; 2) Agent Forte's misstatements and omissions about Fillion's criminal history and general credibility; and 3) Agent Forte's misstatements and omissions about Fillion's statements regarding Corey Donovan.

Additionally, again because the significance of some of the evidence is only apparent when it is contrasted to other evidence on the same topic, the defendant has included in this chart the evidence that was the subject of his pre-trial Defendant's Motion to Suppress, and for *Franks* Hearing. *See* Doc. 12. The evidence that was the subject of the defendant's pre-trial motion is marked by gray shading.

| Specific Item Discovered Post Trial | Forte's Corresponding Statement in Affidavit | Misstatement or Omission[1] |
|---|---|---|
| **Misstatements & Omissions About Firearm Found at Cumberland Farms** | | |
| Video of December 23, 2020 Interview (Doc. 77-5 at minute 11:44-12:06)[2] | Fillion "has been previously interviewed regarding an *unrelated case* and was found to have provided | In this video, Fillion stated that, after she agreed to go to the store with Adjutant, that at "the ending of my parking lot" Adjutant "took the gun out of his hand and he |

---

[1] Item in ▢ are items that were the subject of the defendant's pre-trial *Frank's* motion.
[2] There is documentation that this video was delivered to counsel for the defendant on September 27, 2021. *See* Doc. 77-9. The defendant gave a detailed analysis of the underlying facts regarding this production in his original pleading on this matter that detailed how this production was mislabeled and that trial counsel did not view this item because it was mislabeled. Doc. 77: 10-12. The defendant hereby incorporates the argument and attachments from his Motion to Dismiss; or Motion for a New Trial or New *Franks* Hearing regarding whether this item was "produced" to the defendant in a timely manner consistent with *Brady*.

| | | |
|---|---|---|
| | *truthful and accurate information."* ¶ 17<br><br>[The parties agree that the "unrelated case" that is refenced in Forte's affidavit is Fillion's arrest at the Somersworth Cumberland Farms on December 22, 2020 and her numerous statements about the firearm that was seized pursuant to this arrest.] | went to like, put in my pocket and he said, 'Here, hold on to this.'" In this video, *Fillion said that she responded, "Leave it loaded?" and Adjutant said, 'Yes.'"* [This statement in this video is inconsistent with Fillion's plea agreement wherein she said she got "'sketched out' while inside the Cumberland Farms *when she realized the object was a firearm*." |
| Dash cam video received by defendant after trial on July 18, 2022. (See attachment 1) | | Somersworth Police dash camera video wherein the officer says to dispatch, "[Fillion] says [Adjutant] got spooked out and *gave [the gun] to her outside the store and she brought it in*." |
| Surveillance videos from Cumberland Farms on December 22, 2020 (*See* Doc. 77-3 and Doc. 77-4) These two videos were received by the defendant after trial | | [These two videos contradict Fillion's initial statement at the scene, as recounted in the dash cam video above, that Adjutant gave Fillion the firearm "outside the store." The two videos depict Adjutant and Fillion arriving at the store and interacting before Fillion enters the store after the police arrive.] |
| Video of March 11, 2021, interview of Fillion[3] (Doc. 77-6 at minute 8:10 – 8:50) | | In this video, Fillion explains her receipt of the firearm as follows: "I hadn't seen any cruiser yet…we literally walked from Bartlett Avenue, from my apartment, we took a left at that road, went right down the main road, and Cumbies is not even like a two-minute walk down that way. *I do remember, before we got to Cumbies, I remember him taking it out of his pocket and he put it in this in the side of me, this pocket.*" |
| Video of December 23, 2020, Interview | | Officer questions Fillion's claim that Adjutant gave her the gun, |

---

[3] *See* Footnote 2 within this motion that references Doc. 77: 10-12 regarding the complicated issue as to when the defendant received this item.

| | | |
|---|---|---|
| (Doc. 77-5 at minute 11:25- 14:20) (See Footnote 2 Re: receipt of item) | | stating *"You're the one with the warrant, so, if anything, he would walk if we found you walking on the street."* |
| Both video of December 23, 2020 (at 42:45-43:03) and video of March 11, 2021 (at 7:18 – 7:27) interview of Fillion. | | In the December 2020 video, Fillion is asked, *"Did [Adjutant] say where he got the gun at?"* and Fillion responded, *"No."* In the March 11, 2021 video, after giving a detailed explanation about the location where Adjutant said he had access to guns, Forte asks Fillion, *"He supposedly, he gotten the gun, he got the gun from there?"* and Fillion responded, *"Yes, yes, the guns and the down."* [It is important to note that at the time of the second interview, when Fillion says she *did* know where Adjutant got the firearm, she is aware that she is wanted on a federal firearms charge and she is speaking to a ATF agent.] |
| **Misstatements and Omissions About Fillion's Criminal History and General Credibility** | | |
| | "At the time of the March 11, 2021, interview, [Fillion] was in police custody for both state and federal warrants." ¶ 17 | Not included in the affidavit is that at the time of her arrest on March 11, 2021, Fillion ran from Belmont Police after being stopped for a motor vehicle violation and they charged her with resisting arrest. Fillion fled Belmont Police on foot because she knew she had an active federal arrest warrant for the crime of Felon in Possession of a Firearm and an active state arrest warrant for six (6) counts of violation of her probation. Doc. 12: 8 |
| Video of December 23, 2020, Interview (Doc. 77-5 at minute 2:22) (*See* Footnote 2 Re: receipt of item) | | Fillion not only had federal and state warrants at the time of her March 11, 2021 arrest, *Fillion was also wanted for several warrants at the time of her December 22, 2020 arrest at the Cumberland Farms in Somersworth.* |

| | | |
|---|---|---|
| Video of December 23, 2020 Interview (Doc. 77-5 at minute 17:08-17:16) (*See* Footnote 2 Re: receipt of item) | | During this video, the officer questioning Fillion commented, *"Your giving false names to all these police departments –* Concord, Laconia, [inaudible]… Did they fall for it?" |
| Video of December 23, 2020 Interview (Doc. 77-5 at minute 18:20-22:24) (*See* Footnote 2 Re: receipt of item) | | At the time of her December 22, 2020 arrest, there was an arrest warrant for Fillion because of an automobile theft. During this interview, *Fillion denied her culpability for auto theft when confronted with the evidence against her*. |
| | "I know the [Fillion] to have a criminal record, including a felony conviction for theft by unauthorized taking, in addition to a history of abuse of controlled drugs." ¶ 17 | The defendant's *Franks* motion references a Gilmanton arrest for burglary. At the *Franks* hearing, Donovan's trial attorney had exhibits for other details about Fillion's criminal history including a felony conviction and probation violation in Grafton County Superior Court. Doc. 12: 7-8 |
| | "He/she did not appear to be under the influence of any substances during our meeting." ¶ 17 | Ramalho had just injected Fillion with methamphetamine 15 minutes before her arrest and she was high at the time of her interview. Doc. 12: 8 |
| **Misstatements & Omissions about Fillion's Statements Re Donovan** | | |
| | *Timeline Error* – Fillion said that Donovan picked up she and her boyfriend "late on March 7, or early in the morning of March 8, 2021" and Donovan told them that the Tilton Police allowed him to take two deer carcasses. ¶19 | "Tilton Dispatch log indicates Corey's encounter with Tilton PD took place at 11:59 pm on March 8, 2021 and that Tilton PD cleared the scene at 12:20 am, March 9, 2021. This would have reduced [Fillion's] encounter with [Donovan] by a full day. Doc. 12: 4-5 |
| | *Omissions Re: Evidence from Grantham Police* – Law enforcement was called to the scene because of the blood Corey had left on his vehicle from the deer carcasses. Fillion said Donovan had the tripod for | Special Agent Forte failed to include in his affidavit, that on March 18, 2021, he followed up with Grantham Police Department [which] …did not see any tripods in or around Donovan's vehicle. Further, Forte viewed body cam footage of the Grantham Police |

5

| | | |
|---|---|---|
| | the suspected machine gun in his car. ¶ 25 | search of Donovan's vehicle. Forte failed to include in his affidavit the fact that the Grantham Police reports and body cam footage contradicted Fillion's claims.  Doc. 12: 6 |
| Video of March 11, 2021, interview of Fillion[4] (Doc. 77-6 at minute 8:10 – 8:50) | | In this video, Fillion states the following regarding the Grantham Police contact while Donovan was at the veterinarian: "When we were at the vets, the police were called because, we went to the vets and he had blood up and down his car.  The police showed up and he, I remember we got out – back of the car and he took this metal thing out and he's like, 'You know what this is?'  I said I had no idea what that is.  He said, 'Bobby knows what that is.'  Bobby said, 'I forgot what it was' and then Bobby said, 'Oh, I forgot, that's what you put the machine gun on.' [Agent Forte' statement in his affidavit that "Fillion said that Donovan had the tripod for the suspected machine gun in his car" is a misstatement as the video shows that she said that Donovan took the tripod out of the car after the police arrived.  This fact materially enhances the defendant's pre-trial *Frank*'s argument about the omission of the fact that the Grantham Police did not see any tripods.] |
| | Fillion stated that she did not see the suspected machinegun herself.  Fillion indicated that Ramalho saw the machine gun and was visibly shocked by the presence of the machinegun. ¶ 24 | Forte did not attempt to corroborate this claim by speaking with Ramalho prior to seeking the search warrant. Doc. 12: 6 |

---

[4] *See* Footnote 2 and 3 within this motion that references Doc. 77: 10-12 regarding the complicated issue as to when the defendant received this item.

III.     Argument

As Agent Forte did not state that Fillion had a history of providing reliable information to law enforcement, he attempted to bolster Fillion's credibility in two ways.  The first way was to include information that corroborated Fillion's claims such as the information about Donovan's contact with the Tilton and Grantham police during the time she was with Donovan.  While this evidence and other evidence did corroborate some of Fillion's claims, it did not corroborate any of her claims of criminal activity.  Forte further attempted to vouch for Fillion's credibility when he stated that, *Fillion* "has been previously interviewed regarding an unrelated case and was found to have provided truthful and accurate information." Doc. 15-1: 7.

The "unrelated case" that Forte references above is an investigation related to Fillion possessing a firearm at the Somersworth Cumberland Farms store on December 22, 2020.  At the time the defendant litigated his *Franks* motion in September 2021, he was only aware of one statement from Fillion describing the details of the Somersworth case and that was the statement contained in Fillion's plea agreement.  In that statement, Fillion suggested that Adjutant had given her an object before she went into Cumberland Farms, that she only realized that the object was a gun *after* the police arrived and she impulsively hid the firearm in the store:

> [Fillion] then proceeded to explain that while walking with a man earlier he got "sketched out" and placed a gun that he was carrying into her sweatshirt pocket. [Fillion] then advised that she got "sketched out" while inside the Cumberland Farms *when she realized the object was a firearm* and placed the handgun in the sugar packet holding container thereby exercising dominion and control over the firearm.[5]  (Emphasis added)

Based upon evidence that the defendant discovered after trial, we now know that Fillion made four conflicting statements about how and when she came to know about and possess the

---

[5] *See* Doc. 77-2: 3 (Fillion plea agreement)

7

subject firearm. As the defendant only had access to one of these statements prior to trial, the plea agreement, he did not have exculpatory evidence that would have undermined the affiant's claim that Fillion gave truthful and accurate information about the firearm and resulted in a different outcome on his *Franks* motion. Here is a chart referencing only the statements that Fillion made about how and when she came to possess the firearm:

| | |
|---|---|
| 12/22/20 | In a recording produced after trial, a Somersworth officer is heard to say that Fillion said that Adjutant "…got spooked out and *gave [the gun] to her outside the store and she brought it in.*" |
| 12/23/20 | In a recording that trial counsel did not review prior to trial as it was labeled as evidence relating to the case alleging a violation of the defendant's conditions of release, Fillion said that at "the ending of my parking lot" of her apartment, Adjutant "took the gun out of his hand and he went to like, put in my pocket and he said, 'Here, hold on to this.'" In this video, *Fillion said that she responded, "Leave it loaded?"* and Adjutant said, 'Yes.'" |
| 3/11/21 | "I hadn't seen any cruiser yet…we literally walked from Bartlett Avenue, from my apartment, we took a left at that road, went right down the main road, and Cumbies is not even like a two-minute walk down that way. *I do remember, before we got to Cumbies, I remember him taking it out of his pocket and he put it in this in the side of me, this pocket.*" |
| 8/17/21 Plea Agreement | Fillion said she "got 'sketched out' while inside the Cumberland Farms *when she realized the object was a firearm* and placed the handgun in the sugar packet holding container thereby exercising dominion and control over the firearm." |

These three additional statements, when considered in their totality are important not just because of the inconsistencies contained therein, but because of the totality of their importance which shows that Fillon repeatedly adjusted her story to minimize her culpability. The December 22, 2020, statement shows Fillion's original attempt to minimize her contact with the firearm by claiming she only took possession of it outside the store. Fillion had to change this statement the next day after surveillance video clearly shows that Adjutant did not hand her the firearm *outside* the store. Fillion's December 22, 2020 statement about a conversation with

Adjutant about the firearm being loaded is inconsistent with her August 2021 statement that she did not realize that the "object" in her pocket was a firearm until she was inside the store.

As to the March 11, 2021 statement, it must be considered in the context that Fillion knows that: 1) she has been arrested for federal charges relating to possession of the firearm on December 22, 2020; 2) there was a video surveillance camera that depicts when she and Adjutant walked into the parking lot of the Cumberland Farms; 3) she is speaking to a federal ATF agent. Knowing that she cannot claim to have received the firearm right before going into the store, due to the surveillance camera footage, Fillion shifts her possession of the firearm to the moment before she and Adjutant enter the Cumberland Farm parking lot.

Finally, when she is pleading guilty to the actual knowing possession[6] of the firearm, Fillion once again minimizes the window of her possession of the firearm by suggesting that she did not "realize" that she possessed the firearm until seconds before she put the firearm in the sugar packet container. The totality of these four statements shows that, at a minimum, Agent Forte made a recklessly false statement in his affidavit when he said that Fillion gave truthful and accurate statements about an unrelated case. As this Court acknowledged at the previous hearing, Attorney Stachowske was zealous in his litigation of the *Franks* issue, and he would have certainly used the above information to establish the need for a *Franks* hearing and/or the need to suppress the subject search warrant if it had not been mislabeled by the government.

Forte's claim that Fillion gave truthful and accurate information about the Cumberland Farms case is also undermined by the fact that Fillion gave conflicting accounts of her knowledge as to the source of the firearm that she claimed Adjutant gave her. It is worth noting that Fillion claims to know more about the source of the firearm after she is arrested on March

---

[6] *See* Doc. 77-2: 2 (Fillion Plea Agreement)

11, 2021, on the federal firearm charge and was talking to an ATF agent who may be able to assist her in getting a lesser sentence on the charge.

The information that Agent Forte corroborated only established that Fillion had contact with Donovan but there was not any information that corroborated the claimed criminal activity. *See U.S. v. Gifford*, 727 F.3d 92, 95 (1st Cir. 2013). This video, that the defendant did not have meaningful notice of prior to trial, shows that not only did Agent Forte' attempts to corroborate Fillion's claims about Donovan's criminal activity fail, he found evidence that contradicted Fillion's claim that Donovan removed a metal object from his car in the presence of the Grantham Police. This video, when considered in the totality of misstatement and omissions detailed in the chart above and included in a reformed affidavit would have failed to establish probable cause to search Donovan's property. *See United States v. Roman*, 327 F.Supp.3d 312, 328 (D.Mass., 2018)

Presumably, Agent Forte attempted to compensate for the fact that he was not able to corroborate the actual criminal activity alleged by Fillion and attempted to compensate for this shortcoming by bolstering her credibility with the statements she made regarding the Cumberland Farms case. In his attempt to bolster Fillion's credibility, Agent Forte made numerous material misstatements and omissions that "cumulatively negate probable cause" and were "recklessly false." *See* Doc. 66: 47-48.

The defendant made numerous other arguments in this <u>Motion to Dismiss; or Motion for a New Trial or New *Franks* Hearing</u> including other *Brady* claims regarding his *Franks* motion and *Brady* claims regarding his guilt or innocence. *See* Doc. 77  While he is not repeating those claims in this motion, his failure to repeat those claims should not be interpreted as his either waiving or abandoning those claims. The defendant reasserts all the claims and arguments set

forth in <u>Motion to Dismiss; or Motion for a New Trial or New *Franks* Hearing</u> and he is only filing this motion at the Court's request so that he can clarify some of the specific items that we discussed in his original motion.

                                                        Respectfully submitted,
                                                        Corey Donovan
                                                        By counsel

Dated:  January 17, 2023                            */s/* Donna J. Brown
                                                       Donna J. Brown
                                                       NH Bar ID 387
                                                       Wadleigh, Starr & Peters, PLLC
                                                       95 Market St.
                                                       Manchester, NH  03101
                                                       (603) 669-4140
                                                       dbrown@wadleighlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within Motion was e-filed to AUSA Anna Krasinski and AUSA Charles Rombeau on this 17th day of January 2023.

                                                         */s/* Donna J. Brown
                                                        Donna J. Brown